580 So.2d 143 (1991)
Clarence James JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 74866.
Supreme Court of Florida.
May 16, 1991.
*144 Clifford L. Davis, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Clarence Jones appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm both the conviction and sentence.
On July 7, 1988 Tallahassee police officers Greg Armstrong and Ernest Ponce de Leon responded to a call regarding a car parked behind a laundromat. They found Henry Goins, Clarence Jones, and Irvin Griffin, escapees from a Maryland prison, and Beverly Harris, a woman traveling with the trio, seated in the car. While Armstrong checked on the driver's identification and Ponce de Leon tried to run a computer check on the car's license tag,[1] one of the car's passengers fired two shots at Ponce de Leon. Armstrong then engaged the car's occupants in a gun battle. Jones picked up Ponce de Leon's service weapon, and he and Griffin, both of whom were wounded, fled the scene on foot. They broke into a nearby home, where police captured them a short time later. Officer Ponce de Leon was dead at the *145 scene from two gunshot wounds to the chest.
The state indicted Goins, Jones, and Griffin for, among other things, first-degree murder. Goins negotiated a guilty plea to second-degree murder in exchange for a thirty-year prison sentence, and the state conducted a joint trial of Jones and Griffin. Harris testified at trial for the state and identified Jones as the person who shot Ponce de Leon. Jones testified on his own behalf that an unknown drug dealer who met them at the laundromat shot the officer. The jury convicted both Jones and Griffin as charged. At separate penalty proceedings Griffin received a sentence of life imprisonment,[2] while the court agreed with the jury's eleven-to-one recommendation and sentenced Jones to death.
On appeal Jones first claims that the trial court erred in excusing for cause unnamed prospective jurors because of their opposition to the death penalty. Notwithstanding Jones' failure to identify specific persons, our review of the voir dire discloses that all of the excusals for cause were well within the discretion of the trial court to grant them. Cook v. State, 542 So.2d 964 (Fla. 1989); Davis v. State, 461 So.2d 67 (Fla. 1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). Therefore, we find no merit to this issue.
Jones next argues that the trial court improperly restricted his cross-examination of two state witnesses. Jones sought to question these witnesses, Harris and a man who lived near the house that Jones and Griffin broke into, about whether they knew one another, whether either was a drug dealer, and whether they had arranged a drug deal which led to the officer's death. The court ruled that Jones could ask if the second witness knew Harris, if he planned to meet her on the day of the murder, and if he planned to do a drug deal with her that day, but could not ask if he were a crack dealer or if he had been convicted specifically for dealing drugs. See generally Parks v. Zitnik, 453 So.2d 434 (Fla. 2d DCA 1984) (improper to ask witness about nature of convictions). Regarding questions the defense sought to ask Harris, the court held that she could not be questioned about her possible drug use or dealings when she lived in Tallahassee from 1984 to 1986 because any such evidence was so remote in time from the instant murder. Both witnesses testified that they did not know one another, had had no dealings with one another, and had not planned a drug deal for the day of the murder.
Trial courts have wide latitude to impose reasonable limits on the scope of cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). After reviewing the record, we find no undue restriction on the development of Jones' defense. Therefore, we hold that the trial court did not abuse its discretion in limiting the cross-examination of these witnesses. Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981).
We also find no error in two other issues concerning these same state witnesses. The court did not err in refusing to allow the defense to question these witnesses about convictions involving drug-related offenses and violence against a police officer. The proposed questions regarding their prior convictions do not meet the test for "reverse" Williams[3] rule evidence as set out in State v. Savino, 567 So.2d 892 (Fla. 1990), and, thus, would have been improper impeachment. See Breedlove v. State, 580 So.2d 605 (Fla. 1991). Prior inconsistent statements may be used to impeach a witness' trial testimony. Taylor v. State, 139 Fla. 542, 190 So. 691 (1939). We find that the trial court did not abuse its discretion in refusing to allow presentation of Harris' original statement that Jones shot the victim with a "silver" handgun *146 because on cross-examination she admitted making that statement and testified that she made it while in shock from having been shot and on further reflection remembered Jones' weapon as being a blue-steel handgun.
As his final challenge to the guilt phase, Jones argues that introducing evidence of Griffin's prior attempted murder of a police officer unduly prejudiced him. The court carefully instructed the jury that this evidence went solely to Griffin and had nothing to do with Jones. On the totality of the circumstances we see no error regarding this issue.
Turning to the penalty phase, the trial court found that five aggravating circumstances, 1) committed while under sentence of imprisonment, 2) prior conviction of violent felony, 3) committed during a robbery, 4) committed to avoid or prevent arrest, and 5) victim was a law enforcement officer engaged in performing official duties, had been established. Because factors 4 and 5 overlapped to some degree in this case, the court considered those factors collectively. Factors 1, 2, and 4 and 5 are supported by the evidence. Number 3, however, is not. Taking the officer's service weapon, technically an armed robbery, was only incidental to the killing, not the reason for it. See Parker v. State, 458 So.2d 750 (Fla. 1984), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985). Reversal is not warranted, however, because the trial court stated: "This circumstance is not determinative; the sentence of death would be imposed even if it were not applied."
The court found that none of the statutory mitigating circumstances applied and, after carefully examining the nonstatutory mitigating evidence, found that no mitigators had been established. Jones argues that the court should have found statutory and nonstatutory mitigators, but "[t]he resolution of factual conflicts is solely the responsibility and duty of the trial judge, and, as the appellate court, we have no authority to reweigh that evidence." Gunsby v. State, 574 So.2d 1085, 1090 (Fla. 1991). Although cultural deprivation and a poor home environment may be mitigating factors in some cases, sentencing is an individualized process. We cannot say the trial court erred in finding the evidence presented insufficient to constitute a relevant mitigating circumstance. See Cook; Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988). Therefore, the trial court's conclusion that death is the appropriate penalty in this case is affirmed.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Authorities later established that the car had been stolen.
[2] The jury voted 12 to zero in favor of life imprisonment for Griffin. The district court affirmed his convictions and sentences without opinion. Griffin v. State, 573 So.2d 842 (Fla. 1st DCA 1991).
[3] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).