732 So.2d 313 (1999)
Clarence JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 90,976.
Supreme Court of Florida.
March 25, 1999.
Rehearing Denied May 25, 1999.
Steven L. Seliger of Garcia and Seliger, Quincy, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, Florida, for Appellee.
PER CURIAM.
We have on appeal the judgment of the trial court denying Clarence James Jones, a prisoner on death row, relief requested pursuant to Florida Rule of Criminal Procedure *314 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed in this opinion, we affirm the trial court's judgment.

I. BACKGROUND
Appellant was convicted and sentenced to death for the first-degree shooting murder of Tallahassee police officer Ernest Ponce de Leon. This Court affirmed the conviction and sentence on direct appeal. Jones v. State, 580 So.2d 143 (Fla.), cert. denied, 502 U.S. 878, 112 S.Ct. 221, 116 L.Ed.2d 179 (1991). The relevant facts are set forth in that opinion.
On July 7, 1988, Tallahassee police officers Greg Armstrong and Ernest Ponce de Leon responded to a call regarding a car parked behind a laundromat. They found Henry Goins, Clarence Jones, and Irvin Griffin, escapees from a Maryland prison, and Beverly Harris, a woman traveling with the trio, seated in the car. While Armstrong checked on the driver's identification and Ponce de Leon tried to run a computer check on the car's license tag, one of the car's passengers fired two shots at Ponce de Leon. Armstrong then engaged the car's occupants in a gun battle. Jones picked up Ponce de Leon's service weapon, and he and Griffin, both of whom were wounded, fled the scene on foot. They broke into a nearby home, where police captured them a short time later. Officer Ponce de Leon was dead at the scene from two gunshot wounds to the chest.
The state indicted Goins, Jones, and Griffin for, among other things, first-degree murder. Goins negotiated a guilty plea to second-degree murder in exchange for a thirty-year prison sentence, and the state conducted a joint trial of Jones and Griffin. Harris testified at trial for the state and identified Jones as the person who shot Ponce de Leon. Jones testified on his own behalf that an unknown drug dealer who met them at the laundromat shot the officer. The jury convicted both Jones and Griffin as charged. At separate penalty proceedings Griffin received a sentence of life imprisonment, while the court agreed with the jury's eleven-to-one recommendation and sentenced Jones to death.
Id. at 144 (footnotes omitted).
Appellant filed the instant motion for postconviction relief in 1992 and raised fourteen claims.[1] An evidentiary hearing was held on November 12, 1996. The court denied relief in an order dated March 31, 1997. In this order, the court ruled claim 1 to be moot based on defense counsel's representation that all the records to which appellant claimed entitlement were disclosed. The court ruled claims 3, 4, 6 through 10, 12, and 13 to be *315 procedurally barred because they should have been raised on direct appeal. The court also found the procedurally barred claims 4, 8, and 12 were improperly recast as ineffective assistance claims. The court then addressed the ineffective assistance claims 2, 5, and 11 (to the extent that it relates to claim 2). In these claims, appellant argued ineffective assistance of trial counsel based on allegations that his trial counsel: did not adequately investigate available mitigation; failed to move for a change of venue; and failed to obtain an adequate mental health examination. The court rejected as unsupported by the evidence the ineffective assistance claim based on the failure to move for a change of venue. As to the remaining ineffective assistance claims, the trial court, after consideration of the evidence presented at the hearing, concluded that appellant failed to meet his burden of proving either element of the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court also rejected appellant's Brady claim 14, finding that it was both time-barred and without merit. Appellant filed a timely notice of appeal and raises two issues for this Court to consider.

II. ISSUES ON APPEAL

A. INEFFECTIVE ASSISTANCE OF COUNSEL

1. Introduction

Appellant's initial claim is that he was denied effective assistance of counsel during the penalty phase of his trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Appellant bases this claim upon the following allegations: (1) counsel failed to investigate, develop, and present evidence that would support statutory and nonstatutory mitigating circumstances; (2) counsel failed to obtain a competent mental health examination for appellant; and (3) counsel failed to explain to the jury the effects of the human immunodeficiency virus (HIV) from which appellant suffers. In our review of this claim we have carefully considered the trial record and the record of the postconviction evidentiary hearing. We also have the benefit of the trial court's order, which provides a thorough analysis of the claims raised in the postconviction motion.[2]

2. Trial Record

The trial record reflects the following. Before commencement of the penalty phase, appellant's lawyer moved the trial court to appoint Dr. Lawrence Anis to help in developing evidence of statutory and nonstatutory mitigation. At that time, Dr. Anis, a clinical psychologist who specialized in forensic psychology, served as the chief psychologist for the Corrections Mental Health Institution at the Florida State Hospital. Dr. Anis was also engaged in private practice and taught part-time at Florida State University. The trial court appointed Dr. Anis.
Dr. Anis testified during the penalty phase that he had a credible and sufficient information base from which to make an evaluation and render opinions concerning appellant's mental and emotional status. Dr. Anis testified that, in preparing to make an evaluation and render his opinion with respect to appellant's mental and emotional status, he reviewed appellant's extensive prison records, a copy of appellant's GED, and copies of various certificates awarded to appellant. The prison records were important because appellant had been incarcerated for a major portion *316 of his adult life.[3]
Dr. Anis also interviewed appellant. Dr. Anis testified that appellant was very cooperative during their meetings. Appellant openly discussed: (1) the early separation of his parents; (2) his father's early death and the circumstances surrounding the death; (3) having to deal with moving back with his mother, who lived with an abusive boyfriend; (4) drug use and addiction (marijuana, LSD, heroin, barbiturates, and cocaine); (5) alcohol use and addiction; (6) juvenile arrests; (7) his brother being stabbed to death; (8) another brother dying of a heart attack; (9) his mother dying of a heart attack; (10) his worries about congenital heart problems; (11) his daughter's crib death in 1984, while he was incarcerated in Maryland; and (12) his HIV. Based on this history and his review of the relevant documents, Dr. Anis testified in the penalty phase that: appellant's life leading to his 1983 incarceration was one of being either under the influence of drugs or trying to obtain drugs for that purpose; his evaluation of appellant was that he suffers from feelings of helplessness and hopelessness; and that a person with the history and psychological impairment of appellant is often dominated by others. An IQ test administered while appellant was in public school established that appellant was in the "moderately retarded" range. An IQ test administered by Dr. Anis indicated that appellant scored in the higher "dull-normal" range. Dr. Anis testified that appellant's IQ was in the third percentile, between 70 and 75.

3. Postconviction Evidentiary Hearing Record

The record of the postconviction evidentiary hearing before the trial court reflects the following. Clifford L. Davis represented appellant during all facets of the trial and the subsequent appeal. At the time of appellant's trial, Davis had been a member of The Florida Bar for seventeen years and had substantial experience in practicing criminal defense law. Additionally, Davis had previously tried twelve to fifteen capital cases, with approximately six of those cases reaching penalty phase verdict.
Davis testified at the postconviction hearing that upon his appointment to represent appellant he began preparing for the possibility of a penalty phase proceeding by questioning appellant regarding his family history and background. Davis corroborated much of what appellant told him through appellant's extensive prison records. Appellant told Davis he had little contact with his family over the years. Appellant did, however, give Davis the names of three relatives living in the Baltimore area who could be contacted. Davis testified that he telephoned these relatives but that they were not interested in helping appellant. Davis testified that the relatives he spoke to refused his offer to fly them to Tallahassee at no personal expense. Davis did not attempt to compel their attendance. Davis concluded he had enough information regarding appellant's background which Davis obtained from appellant and appellant's prison records. Also, based on his telephone conversations with appellant's relatives, Davis concluded that their testimony would not be particularly helpful to appellant.
Regarding Dr. Anis, Davis testified that he requested this appointment in order to present mitigation evidence. Davis provided Dr. Anis with his case file. Davis testified that Dr. Anis did not indicate the *317 information in the file, coupled with appellant's interview, was insufficient to conduct a competent mental evaluation.[4] Davis testified that he had no question regarding appellant's mental health because appellant was attentive and focused and did not exhibit any signs of mental disturbance. Davis testified he did not question Dr. Anis regarding statutory mitigating circumstances because Dr. Anis indicated his opinion was that none existed.
During the postconviction evidentiary hearing, appellant presented the testimony of Cecilia Alfonso, a clinical social worker; Jethro Toomer, a psychologist; Barry Crown, a neuropsychologist; Scott Folk, a physician; Audrey Sullivan, appellant's sister; and Carolyn Felton, the mother of appellant's son. Based on her review of the relevant records and her interviews with appellant, Alfonso opined that appellant was "intrapsychically affected by his childhood and the environment and the traumas that he was subjected to." After interviewing appellant and administering a battery of tests, Dr. Toomer opined that two statutory mitigating circumstances applied to appellant in that (1) appellant was under extreme mental or emotional disturbance at the time he committed the murder, and (2) appellant's capacity to conform his conduct to the requirements of the law was substantially impaired. Dr. Toomer also stated his opinion that appellant showed signs of an underlying neurological impairment. Dr. Crown concurred with Dr. Toomer's diagnosis regarding the two statutory mitigating circumstances. Further, Dr. Crown concluded that appellant suffers and did suffer at the time of the crime from organic brain damage and auditory selective attention disorder. Scott Folk, a physician who specializes in the treatment of HIV and acquired immunodeficiency syndrome (AIDS), testified that appellant is HIV positive and about the nature of HIV and the resulting AIDS disease. Audrey Sullivan and Carolyn Felton testified regarding appellant's impoverished childhood. Felton added that a psychiatrist diagnosed appellant's son as mentally disturbed.
After considering this evidence and argument based on this evidence, the trial court denied appellant the relief he requested in his ineffective assistance claims, concluding that appellant failed to meet either prong of the Strickland test. The trial court order states in pertinent part:
In several parts of the postconviction motion, the defendant has directly alleged a claim of ineffective assistance of counsel. He contends that his trial counsel, Clifford Davis, was ineffective during the penalty phase because he had not adequately investigated the potential mitigating circumstances (Claim II); that trial counsel was ineffective in that he failed to file a pretrial motion for change of venue (Claim V); and that trial counsel was ineffective during the penalty phase because he failed to obtain an adequate mental health evaluation of the defendant (Claim XI). These claims must be resolved by the standard set in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There the Court held that a criminal defendant asserting a claim of ineffective assistance of counsel has the burden of showing (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense. In summary, the defendant in this case has not established either element of the test.
During the evidentiary hearing, the defendant's postconviction counsel focused on the claim that his trial lawyer *318 failed to investigate potential mitigating evidence and that he failed to obtain an adequate mental health evaluation. However, the record is clear that defense counsel did obtain a mental health evaluation and that he did present the testimony of the expert during the penalty phase. The problem is that the evaluation did not yield a favorable result. Trial counsel explained during the evidentiary hearing that the reason he did not ask the expert a direct question regarding the existence of the statutory mitigating circumstances is that the expert had told him beforehand that he could not testify that those factors existed in the defendant's case. Trial counsel cannot be faulted for refraining from asking a question when he knew the answer would be harmful to his client. Nor can it be said that trial counsel was ineffective merely because postconviction counsel is subsequently able to locate experts who are willing to say that the statutory mitigatory do exist in the present case.
The defendant also claims that trial counsel failed to present testimony by family witnesses who could have provided mitigating evidence. This argument was refuted by Attorney Davis' testimony that the relatives he was able to locate were not willing to come to Florida to attend the trial and that he did not think it was appropriate to compel their attendance. Moreover, the arguments Davis actually made in mitigation with the evidence available to the jury are generally the same as those the defendant would have made with the testimony of the additional witnesses.
The court rejects the defendant's claim that trial counsel should have advised the jury that the defendant was infected with the AIDS virus. During the hearing on the postconviction motion, the defendant presented testimony regarding the nature of his illness and his prognosis. This evidence may have evoked sympathy among those jurors who would have been persuaded that the death penalty was unnecessary because the defendant would eventually die a painful death in any event, but the fear and stigma that some jurors might have associated with AIDS out of ignorance in 1989 may have outweighed the potential sympathy for the defendant. The defense attorney did not refer to the defendant's illness during the guilt phase and minimized its effect during the penalty phase. The court is not prepared to say that these decisions amount to ineffective assistance of counsel.
Mr. Davis obtained the defendant's medical records from the Department of Corrections in Maryland, he called family members in an effort to get them to testify in the penalty phase hearing, and he secured the services of a mental health expert who did testify in the penalty phase hearing. Unlike the attorney in Rose v. State, 675 So.2d 567 (Fla. 1996), who was unfamiliar with the capital sentencing process and conducted no investigation at all, the attorney in this case did make a reasonable effort to investigate and present the available mitigating evidence.
Postconviction counsel did discover additional evidence of mitigation, but the defendant has failed to show that it would have made a difference in the outcome of the penalty phase proceeding. A defendant who claims ineffective assistance of counsel in the penalty phase of a capital case "must demonstrate that but for counsel's errors he would have probably received a life sentence." Hildwin v. Dugger, 654 So.2d 107, 109 (Fla.1995). In this case, the sentence of death does not rest on any of the subjective aggravating circumstances. On the contrary, the death sentence rests on the following objective aggravating circumstances: (1) the murder was committed while the defendant was under sentence of imprisonment, (2) the defendant has a prior conviction of a violent felony, (3) the murder was committed during a robbery, (4) the murder *319 was committed to avoid or prevent arrest, and (5) the victim was a law enforcement officer. The sentence was based on an eleven-to-one jury recommendation for death and it was upheld on direct appeal by a unanimous court. See Jones v. State, 580 So.2d 143 (Fla. 1991). The additional evidence of mitigation presented in the postconviction proceeding would not have changed the result in the face of these objective aggravating factors.
State v. Jones, No. 88-3111, order at 4-8 (Fla.Cir.Ct. Mar. 31, 1997) (footnote omitted) (Final Order Denying Postconviction Relief).

4. Discussion of Appellant's Claims

Competent, substantial evidence supports the trial court's factual findings. Thus, we do not disturb those findings. In Rutherford v. State, 24 Fla. L. Weekly S3, 727 So.2d 216 (Fla.1998), we reviewed a similar ineffective assistance claim. Rutherford alleged in a postconviction motion that his trial counsel was ineffective for failing to investigate his background sufficiently and for failing to present a mental health expert. After an evidentiary hearing, the trial court denied Rutherford the relief he requested. In affirming the trial court's judgment, we quoted the often cited rule from Strickland which guides our evaluation of ineffective assistance claims:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Rutherford, 24 Fla. L. Weekly at S4, 727 So.2d 219 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). Applying this analysis here, we conclude that appellant has failed to establish that his trial counsel was ineffective. Further, assuming ineffectiveness, we conclude that appellant failed to demonstrate any resulting prejudice.

a. Penalty Phase Investigation by Davis

We begin our inquiry into whether the performance of Davis was deficient by recognizing: (1) there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, 104 S.Ct. 2052; and (2) the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. Id. at 688-89, 104 S.Ct. 2052. Similar to the facts in Rutherford, this is not a case in which trial counsel engaged in practically no investigation whatsoever. On this basis, we approve the trial court's distinguishing of Rose v. State, 675 So.2d 567 (Fla.1996). The issue here is whether the investigation by Davis was so unreasonable that Davis "was not functioning as the counsel guaranteed by the Sixth Amendment." Strickland.
Upon his appointment to represent appellant, Davis began an inquiry into appellant's family history. Appellant imparted much of this sordid history to Davis. Although appellant told Davis he had little contact with his family over the years, Davis contacted the three family members appellant said might be helpful. These family members were not very cooperative and even refused to help at trial. Based on his conversations with these relatives, Davis determined that their testimony would not be helpful. Davis concluded he had sufficient evidence of appellant's background from appellant himself, much of which was corroborated through prison *320 records.[5] In view of appellant's extensive prison records detailing much of appellant's history and the lack of family interest as reported in the sworn testimony of Davis and found to be a fact by the trial judge, we agree with the trial court that the performance of Davis did not fall below the Strickland standard. See Strickland, 466 U.S. at 691, 104 S.Ct. 2052 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."); Johnston v. Singletary, 162 F.3d 630, 642 (11th Cir.1998) (same); see also Rose v. State, 617 So.2d 291, 294-95 (Fla. 1993) (trial counsel was not ineffective for failing to call family members where defendant told counsel that he had not had contact with his family for a number of years and that his family's testimony would not be helpful).

b. Mental Health Evaluation by Dr. Anis

We also agree with the trial court's conclusion that Davis, through Dr. Anis, provided appellant with a competent mental evaluation. As is evident from our opinion in Rutherford, trial counsel is not obligated to procure and present mental health experts as long as there is a valid reason for not doing so. In this case, however, Davis did procure and present an eminently qualified mental health expert. Our review of the trial record here shows that Dr. Anis presented strong testimony in mitigation of a death sentence. Appellant did not present any evidence at the postconviction hearing which demonstrated an inadequacy the evaluation by Dr. Anis. Rather, appellant only presented mental health experts who came to a different conclusion from that of Dr. Anis based on similar evidence. The evaluation by Dr. Anis is not rendered less than competent, however, simply because appellant has been able to provide testimony to conflict with that presented by Dr. Anis. See Correll v. Dugger, 558 So.2d 422, 426 (Fla. 1990) (mental health examination is not inadequate simply because defendant is later able to find experts to testify favorably based on similar evidence); see also State v. Sireci, 502 So.2d 1221, 1224 (Fla.1987) ("[A] new sentencing hearing is mandated in cases which entail psychiatric examinations so grossly insufficient that they ignore clear indications of either mental retardation or organic brain damage.").

c. HIV

The trial court correctly concluded that Davis was not ineffective for failing to obtain an expert to discuss the effects of HIV and the resulting AIDS. During the penalty phase of appellant's trial, Davis did state to the jury the fact that appellant was infected with the HIV virus, although he did not emphasize the point. The emphasis to be placed on such evidence is again clearly within the broad range of reasonableness afforded trial counsel in strategic matters. Davis testified that he believed extensive focus on the HIV would be more prejudicial to appellant than helpful. On this record, we conclude that the strategic decision of Davis not to focus on appellant's HIV was well within the wide range of professional assistance. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

d. Prejudice

Assuming arguendo that trial counsel was ineffective, we agree with the trial court that appellant did not demonstrate prejudice. The State proved five aggravating *321 circumstances beyond any reasonable doubt: (1) the murder was committed while appellant was under a sentence of imprisonment; (2) appellant had a prior violent felony conviction; (3) the murder was committed during the course of a robbery; (4) the murder was committed to avoid or prevent arrest; and (5) the victim was a law enforcement officer engaged in performing his official duties. The trial court merged factors four and five.[6] Although the court found no statutory or nonstatutory mitigation, by virtue of the testimony of Dr. Anis, the sentencing jury was aware of most of the nonstatutory mitigation regarding appellant's impoverished and abusive childhood. The jury was also aware of appellant's abuse of alcohol and excessive use of marijuana. Nevertheless, the jury recommended a sentence of death by an eleven-to-one vote, and the trial court sentenced appellant in accordance with that recommendation. On this record, we conclude that appellant has failed to establish a reasonable probability that, absent the claimed errors, the sentencer would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death.

B. BRADY CLAIM
In his second issue on appeal, appellant argues that the State withheld exculpatory material in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). During the postconviction discovery process, appellant avers that he discovered a memorandum written by Deputy Grea Bevis, who was investigating the possibility that appellant and his codefendants, Griffin and Goins, were planning an escape. The investigation predated appellant's trial. The document alleged to have been Brady material memorialized an interview Bevis had with Griffin's cellmate, Kevin Eason. Eason is quoted in the memorandum as saying Griffin admitted to killing Officer Ponce de Leon. Eason, however, is also quoted as saying Griffin told him that it was appellant who killed Officer Ponce de Leon. Appellant claims that had he known of the memorandum he would have called Eason as a witness in the penalty phase because his testimony would have been exculpatory as to "sentencing culpability."
At the evidentiary hearing below, the State presented Kevin Eason and Deputy Grea Bevis. Eason testified that Griffin told him it was appellant who shot Officer Ponce DeLeon. Eason denied that Griffin admitted to shooting the officer. Bevis testified that he received information that appellant and his codefendants, Griffin and Goins, were planning an escape. Bevis then proceeded to interview Kevin Eason, who was Griffin's cellmate at the time. Afterward, Bevis prepared a memorandum summarizing this interview. Bevis recognized the apparent inconsistency in his report. However, he testified that Griffin's implication of himself as the shooter was somehow related to the escape plot and that Eason's understanding of the crime as related by Griffin was that "[appellant] was the actual trigger man."
After the evidentiary hearing, the trial court ruled that appellant's Brady claim was time-barred under Florida Rule of Criminal Procedure 3.850(b).
The final issue raised in the postconviction motion is whether the state failed to disclose exculpatory evidence. Counsel for the state argues that the claim is time-barred because the defendant sought leave to amend on October 7, 1993, and the amendment adding this claim was not made until October 25, 1996. In response, the defendant claims that he did not actually receive the records until much later, at a time well within the limit for filing an amended claim.

*322 The court might be inclined to accept the defendant's argument on the timeliness of this claim if there had been a proper sworn allegation explaining the reasons for the delay in presenting the issue. Rule 3.850 requires that a postconviction motion be submitted under oath. If the motion asserts an untimely claim, then the defendant must also include a sworn allegation explaining the defendant's inability to assert the claim earlier.... The amended postconviction motion in this case makes no allegation regarding the untimeliness of the claim. Without a sworn statement of facts that justify an exception to the time limit in rule 3.850(b), the court must consider the claim as untimely.
Jones, No. 88-3111 at 8-9. We find no error in this ruling. See Fla. R.Crim. P. 3.850(b) & (c); cf. Mills v. State, 684 So.2d 801, 804 (Fla.1996). The trial court also concluded that the claim was without merit on the bases that the memorandum was neither exculpatory nor material:
In this case, the missing document was a three-page memorandum prepared by detective Grea Bevis regarding his interview with Kevin Eason, the cellmate of codefendant Irvin Griffin. The defendant introduced only the first page of the memorandum, and, in that part of the document, the detective noted that Griffin told Eason that he, not the defendant, was the triggerman. Before the conclusion of the evidentiary hearing, the state produced the entire memorandum. On the third page of the memorandum detective Bevis noted that Griffin told Eason that the defendant Jones was the triggerman. This document is hearsay, but even if it could be admitted in evidence it would not be exculpatory to the defendant.
Moreover, Kevin Eason appeared at the hearing in this case and testified that he did not tell detective Bevis that Griffin had said he was the triggerman. According to Eason's first-hand account given during the hearing on the defendant's postconviction motion, Griffin said that the defendant Jones was the triggerman. Likewise, Eason said that he told detective Bevis that Griffin said the defendant Jones was the triggerman. Eason said that he never told detective Bevis that Griffin had admitted to being the triggerman. Consequently, the missing document is not material to any issue in the case. At best it could only have been used to impeach the testimony of Kevin Eason, and the testimony would not have been admitted against the defendant in any event.
Jones, No. 88-3111 at 9-10. The record supports the trial court's factual findings. We agree with the trial court's legal analysis of this issue and, therefore, affirm this ruling. See Robinson v. State, 707 So.2d 688, 693 (Fla.1998) (defendant did not carry his burden where record was not clear that state had suppressed evidence and where it was highly debatable that evidence was exculpatory).

III. CONCLUSION
Accordingly, we affirm the trial court's judgment denying appellant postconviction relief.
It is so ordered.
HARDING, C.J., SHAW, WELLS, ANSTEAD and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
NOTES
[1] Appellant's postconviction claims were as follows: (1) certain state agencies withheld public records in violation of chapter 119, Florida Statutes; (2) ineffective assistance of penalty phase counsel for failing to investigate and prepare mitigating evidence adequately; (3) the government's shackling of appellant during his trial in full view of the jury relieved the State of its burden of proof; (4) appellant was denied his constitutional right to be present at critical stages of the trial proceedings, and his counsel was ineffective for failing to ensure appellant's presence at these proceedings; (5) ineffective assistance of trial counsel for failing to move for a change of venue; (6) the jury instruction on the prior conviction of a violent felony aggravating circumstance was unconstitutional; (7) the felony-murder aggravating circumstance is unconstitutional; (8) ineffective assistance of counsel for failing to object to the State's improper penalty phase closing argument; (9) the trial court failed to give limiting instructions regarding the aggravating circumstances; (10) the trial court's refusal to find mitigating circumstances established in the record was unconstitutional; (11) violation of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and ineffectiveness based on this violation; (12) ineffective assistance of counsel for failing to object to unconstitutional burden-shifting instruction; (13) the combination of errors deprived appellant of a fundamentally fair trial; and (14) the State withheld exculpatory material in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] After the trial but before commencement of this postconviction litigation, the trial judge was elevated to the First District Court of Appeal. Once appellant filed the instant postconviction motion, this judge was specially assigned to the circuit court from the district court for the purpose of presiding over appellant's postconviction motion. This Court appreciates the willingness of the judge to continue with the assignment of presiding over this case.
[3] Record evidence reveals that appellant was born in 1955. In November 1975, appellant was convicted of attempted robbery and sentenced to eight years' imprisonment. Appellant was paroled in August 1978. In May 1979, appellant was convicted of a handgun violation and sentence to five years' imprisonment. Appellant was released in January 1983. Appellant was again incarcerated in the state of Maryland in December 1983, when he was sentenced to concurrent twenty-five year terms on three counts of robbery with a deadly weapon and to a concurrent five-year term on one count of attempted robbery with a deadly weapon. Appellant escaped from this detention in June 1988, approximately two weeks before committing this murder.
[4] In fact, Dr. Anis indicated to the contrary during his penalty phase testimony, as evidenced by the following question and answer:

Q [by Davis] Dr. Anis, did you have sufficient materials in conjunction with the interviews that you had of [appellant] to feel comfortable with the evaluation and the opinions that you gave to this jury?
A I am comfortable with the evaluation, the written evaluation that I gave you and to the State attorney and with the statements I've made today.
[5] We give the conclusion of Davis in this respect substantial deference in light of his experience in representing capital defendants at the time he represented appellant. See Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) ("Our strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel.").
[6] On direct appeal, we struck the robbery aggravating circumstance. Jones v. State, 580 So.2d 143, 146 (Fla. 1991).