794 So.2d 579 (2001)
Clarence JONES, Petitioner,
v.
Michael W. MOORE, etc., Respondent.
No. SC00-660.
Supreme Court of Florida.
July 5, 2001.
Rehearing Denied September 5, 2001.
*581 Steven L. Seliger of Garcia & Seliger, Quincy, FL; Gregory C. Smith, Capital Collateral Regional CounselNorthern Region, Tallahassee, FL; and Gail E. Anderson, Special Assistant CCC-NR, Greensboro, FL, for Petitioner.
Robert A. Butterworth, Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, FL, for Respondent.
PER CURIAM.
Clarence Jones, a state prisoner under sentence of death, petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. We deny the petition.

BACKGROUND
Jones was convicted and sentenced to death for the 1988 first-degree shooting murder of Tallahassee police officer Ernest Ponce de Leon. The facts are as follows:

*582 On July 7, 1988 Tallahassee police officers Greg Armstrong and Ernest Ponce de Leon responded to a call regarding a car parked behind a laundromat. They found Henry Goins, Clarence Jones, and Irvin Griffin, escapees from a Maryland prison, and Beverly Harris, a woman traveling with the trio, seated in the car. While Armstrong checked on the driver's identification and Ponce de Leon tried to run a computer check on the car's license tag, one of the car's passengers fired two shots at Ponce de Leon. Armstrong then engaged the car's occupants in a gun battle. Jones picked up Ponce de Leon's service weapon, and he and Griffin, both of whom were wounded, fled the scene on foot. They broke into a nearby home, where police captured them a short time later. Officer Ponce de Leon was dead at the scene from two gunshot wounds to the chest.
The state indicted Goins, Jones, and Griffin for, among other things, first-degree murder. Goins negotiated a guilty plea to second-degree murder in exchange for a thirty-year prison sentence, and the state conducted a joint trial of Jones and Griffin. Harris testified at trial for the state and identified Jones as the person who shot Ponce de Leon. Jones testified on his own behalf that an unknown drug dealer who met them at the laundromat shot the officer. The jury convicted both Jones and Griffin as charged. At separate penalty proceedings Griffin received a sentence of life imprisonment, while the court agreed with the jury's eleven-to-one recommendation and sentenced Jones to death.
Jones v. State, 580 So.2d 143, 144-45 (Fla. 1991) (footnotes omitted), cert. denied, 502 U.S. 878, 112 S.Ct. 221, 116 L.Ed.2d 179 (1991) (Jones I).
Jones's trial counsel and appellate counsel were the same individual, Clifford L. Davis.[1] This Court affirmed the conviction and sentence on direct appeal.[2]See id. Jones subsequently filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 for postconviction *583 relief. The trial judge[3] denied the motion. We affirmed. See Jones v. State, 732 So.2d 313 (Fla.1999) (Jones II).[4] Jones now files this habeas corpus petition raising seven issues challenging the legality of his conviction and death sentence.[5] We find several issues to be procedurally barred without the need of elaboration.[6] We find the remaining issues either procedurally barred or meritless.

PRISON ESCAPE AND PHOTOGRAPH EVIDENCE
Our habeas corpus standard of review for ineffective assistance of appellate counsel mirrors the Strickland[7] standard for trial counsel ineffectiveness. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000). We said in Rutherford:
[T]his Court's ability to grant habeas relief on the basis of appellate counsel's ineffectiveness is limited to those situations where the petitioner establishes first, that appellate counsel's performance was deficient because "the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance" and second, that the petitioner was prejudiced because appellate counsel's deficiency "compromised the appellate process to such a degree as to undermine confidence in the correctness of the result."
Id. at 643 (quoting Thompson v. State, 759 So.2d 650, 660 (Fla.2000)).
With regard to evidentiary objections which trial counsel made during the trial and which appellate counsel did not raise on direct appeal, this Court evaluates the prejudice or second prong of the Strickland test first. In doing so, we begin our review of the prejudice prong by examining the specific objection made by trial counsel for harmful error. A successful petition must demonstrate that the erroneous ruling prejudiced the petitioner. If we conclude that the trial court's ruling was not erroneous, then it naturally follows that habeas petitioner was not prejudiced *584 on account of appellate counsel's failure to raise that issue. If we do conclude that the trial court's evidentiary ruling was erroneous, we then consider whether such error is harmful error. If that error was harmless, the petitioner likewise would not have been prejudiced.
Jones argues that appellate counsel should have pursued on direct appeal objections to the admission of details of his prison escape in Maryland. The gravamen of Jones's prison escape contention is that appellate counsel erred in not raising objections made by trial counsel to those portions of Antonie Garrett's testimony regarding the Maryland prison escape. Garrett, a Maryland correctional officer, testified that while he was working yard duty at the Maryland House of Corrections on June 25, 1988, inmate Griffin threatened Garrett with a knife. His testimony revealed that Griffin prevented him from moving or sounding an alarm while inmate Goins cut a hole in the prison fence. Garrett watched as a total of five inmates went through the hole Goins cut in the fence.[8] Trial counsel objected to this testimony and argued that it was not relevant, and even if relevant, the prejudicial effect far outweighed its probative value.
By the time Garrett testified, other witnesses had testified without objection that Jones had escaped from prison. Officer Berkley Clayton testified that he had received flyers concerning a Maryland prison escape. Officer Clayton testified that from these flyers he identified Jones, Griffin, and Goins as three individuals who had escaped from the Maryland prison. Traveling companion Harris testified that Jones, Griffin, and Goins told her that the trio had escaped from prison and that they were not going to go back. Thus, at the time Garrett testified, the jury had been exposed to Jones's prison escape.[9]
On direct appeal, objections under section 90.403, Florida Statutes (2000), are reviewed under an abuse of discretion standard. See Williamson v. State, 681 So.2d 688, 696 (Fla.1996). In Williamson, we said:
Almost all evidence introduced during a criminal trial prosecution is prejudicial to a defendant. In reviewing testimony about a collateral crime that is admitted over an objection based upon section 90.403, a trial judge must balance the import of the evidence with respect to the case of the party offering it against the danger of unfair prejudice. Only when the unfair prejudice substantially outweighs the probative value of the evidence should it be excluded.
(Citations omitted.)
The trial judge, after viewing Garrett's proffer, specifically ruled that Garrett's testimony was relevant and found that the probative value was not substantially outweighed by its prejudicial effect. The trial judge reasoned that Garrett's testimony was relevant because the escape, when considering the closeness in time to the murder (approximately two weeks) and the fact the victim was a police officer, went to show Jones's state of mind. The trial judge specifically prohibited the State from exploring the reasons why Jones was in custody in Maryland.
Based on our review of the trial record regarding this issue, we conclude *585 that the trial court's determination that the evidence could be admitted was not error. We agree with the trial judge's ruling that Garrett's testimony had relevance to show the escapees' states of mind at the time of the criminal episode involving the shooting in Tallahassee. We further agree with the trial judge in his overruling the section 90.403 objection in the context of the evidence already admitted in the trial. Moreover, the trial judge did not allow the details of the escape to become a focus of the trial. Thus, we conclude that the trial judge did not abuse his discretion in denying this objection. Accordingly, we determine that Jones has failed to demonstrate prejudice. Even if we were to accept that the trial judge's section 90.403 ruling was erroneous and appellate counsel's performance was deficient for failing to raise this point, the other evidence in the record, including Harris's eyewitness testimony, would have made such error harmless beyond a reasonable doubt. See Atkins v. Dugger, 541 So.2d 1165, 1167 (Fla.1989) (appellate counsel not ineffective for failing to raising an issue with little or no merit on appeal).
Similarly, we find meritless Jones's next contention that appellate counsel should have raised as an appellate point the admission of various photographs found at the crime scene. The trial judge allowed into evidence photographs found in the car used by the escapees that displayed Jones, Griffin, and Goins together with guns and money. Trial counsel objected to the photos on relevance and unfair prejudice grounds and raised an objection to one photo on the added ground that the photo suggested other crimes. The trial judge admitted the photos, determining that the guns depicted in the photos were similar to guns that were used in the murder and found in or near the car in which Jones was riding at the time of the murder.[10] The trial judge excluded the writings on the photos. The trial judge also excluded photos that contained what appeared to be machine guns, finding that the prejudicial value of these photos substantially outweighed any probative value.
As with the prior evidentiary issue, we conclude that the trial judge did not commit harmful error in admitting the photos. The trial judge made a reasoned choice when he excluded some of the photos. Those which were admitted were relevant to the issues concerning whether it was the escapees who shot Officer Ponce de Leon rather than another assailant, as contended by Jones. Even if the admission of the photos were considered to be error, the error was harmless beyond a reasonable doubt. Accordingly, Jones is unable to successfully demonstrate that habeas relief is warranted on this issue.

SEVERANCE
Jones claims that his appellate counsel was ineffective for failing to pursue the trial judge's denial of Jones's severance motions. During trial, Jones's trial counsel moved for severance three times, the first coming after codefendant Griffin's opening argument. The trial judge reserved his ruling until the State presented Williams[11] rule evidence against Griffin. Over Jones's objection, the State presented evidence that Griffin has previously attempted to murder a police officer.
*586 In respect to this last motion for severance we agree with the State that this issue was within Jones's issue on direct appeal concerning admission of this evidence as to Griffin. Appellate counsel challenged the trial judge's decision to admit this evidence by arguing on the direct appeal the "prejudicial effect" to Jones stemming from being a codefendant in the case with Griffin, who had evidence about the prior attempted murder of another police officer admitted against him. See Jones I, 580 So.2d at 146. We affirmed the trial judge, stating: "The [trial] court carefully instructed the jury that this evidence went solely to Griffin and had nothing to do with Jones. On the totality of the circumstances we see no error regarding this issue." Jones I, 580 So.2d at 146.
Jones's direct appeal argument on this point was at its core an argument for severance. On direct appeal, appellate counsel argued Crum v. State, 398 So.2d 810 (Fla.1981), and Rowe v. State, 404 So.2d 1176 (Fla. 1st DCA 1981), in support of appellate counsel's point on appeal. These cases concern severance. See Crum, 398 So.2d at 811-12; Rowe, 404 So.2d at 1176-77. In this habeas petition, Jones argues the same Crum and Rowe cases to support collateral counsel's argument that Jones's appellate counsel was ineffective for failing to raise the severance claim on direct appeal. This Court previously has made clear that habeas is not proper to argue a variant to an already decided issue. See Thompson v. State, 759 So.2d 650, 657 n. 6 (Fla.2000).
As to the other motions for severance, we conclude that the trial judge did not abuse his discretion in denying the motion to sever. A trial judge's ruling regarding a severance motion is reviewed on appeal for abuse of discretion. See Coleman v. State, 610 So.2d 1283, 1285 (Fla.1992). Jones's reliance in the present petition on Crum is misplaced. This case is factually distinguishable from Crum in the same way Crum was distinguished in Dean v. State, 478 So.2d 38 (Fla.1985):
Petitioner in [McCray v. State, 416 So.2d 804 (1982)] had also relied on Crum to support his argument that a severance was required. We distinguished Crum in the following manner:
In that case, two brothers, Preston and Marvin Crum, were charged with murder. Prior to trial, counsel for appellant Preston obtained a statement from codefendant Marvin which was in total accord with Preston's version of the incident. After the jury was sworn, Preston learned that Marvin had changed his story and intended to accuse Preston, at trial, of committing the murder. Marvin was not required to give the statement, but once he did so, Preston was entitled to rely on that statement. When codefendant Marvin changed his story after the jury was sworn, we determined that, on a proper motion, severance was necessary because Preston was, under these circumstances, denied a fair trial.
The problem in Crum was not simply that the codefendants had antagonistic defenses. The problem was that one codefendant induced the other to believe that their defenses would be completely consistent and then, after jeopardy attached, decided to change his story, thereby prejudicing the proper preparation of the case for trial. The circumstances would have been different had there been no prior statement or had there been sufficient notice before trial of the change in Marvin's position.
Dean, 478 So.2d at 43 (quoting McCray, 416 So.2d at 807) (alteration in original).
*587 In Dean, we relied upon our statement in McCray in which we stated:
[T]he question of whether severance should be granted must necessarily be answered on a case by case basis. Some general rules have, however, been established. Specifically, the fact that the defendant might have a better chance of acquittal or a strategic advantage if tried separately does not establish the right to a severance. Nor is hostility among defendants, or an attempt by one defendant to escape punishment by throwing the blame on a codefendant, a sufficient reason, by itself, to require severance. If the defendants engage in a swearing match as to who did what, the jury should resolve the conflicts and determine the truth of the matter.
McCray, 416 So.2d at 806 (citations and footnote omitted).
Based upon McCray and Dean, the evidence to which Jones points in this habeas petition did not require the trial judge to grant the severance motion. Simply, Griffin argued a lack of evidence against him and not that Jones committed the crime. Under these circumstances, the trial judge did not abuse his discretion in denying the motions to sever. Accordingly, this issue does not form a basis for habeas relief as Jones is unable to demonstrate prejudice.

AUTOPSY PHOTOGRAPHS
Jones next argues that appellate counsel was ineffective for failing to seek review of certain autopsy photographs admitted during the guilt phase. This Court does not disturb a trial judge's ruling regarding the admissibility of photographic evidence absent a clear showing of abuse of discretion. See, e.g., Wilson v. State, 436 So.2d 908, 910 (Fla.1983). Further, autopsy photographs are relevant to show the manner of death, location of wounds, and identity of the victim, and to assist the medical examiner. See Larkins v. State, 655 So.2d 95, 98 (Fla.1995); see also Mansfield v. State, 758 So.2d 636, 648 (Fla.2000) (upholding admissibility of autopsy photos depicting mutilation of victim's genitalia and brain). Photos that are relevant are admissible so long as their shocking nature does not defeat their relevance. See, e.g., Czubak v. State, 570 So.2d 925, 928 (Fla.1990).
There were graphic autopsy photos entered into evidence without an objection from Jones that the prejudicial value substantially outweighed the probative value. Moreover, several of the photographs to which Jones now objects were introduced at trial without objection.[12] To the extent that the autopsy photos were introduced into evidence without objection, appellate counsel cannot be ineffective for not raising unpreserved claims. See Medina v. Dugger, 586 So.2d 317, 318 (Fla. 1991); Suarez v. Dugger, 527 So.2d 190, 193 (Fla.1988).
Jones's habeas claim, therefore, must rely on three photographs in which trial counsel did preserve error, and that purported error was not argued in the direct appeal. Testimony from trial reveals that these three autopsy photographs include a photo of: (1) Officer Ponce de Leon's left hand with "1918 Lake" written on the hand;[13] (2) Officer Ponce de Leon's back depicting a bluish, bruised-looking area under which rested a bullet; and (3) Officer Ponce de Leon's back with an incision in it to display the location of the *588 bullet. The trial record reflects that the trial judge viewed all the autopsy photographs and determined that the probative value of each of the photos was not substantially outweighed by an unfair prejudicial effect. Again, we conclude Jones has failed to demonstrate that the trial judge abused his discretion in admitting these photographs. See Larkins, 655 So.2d at 98; Mansfield, 758 So.2d 636 (Fla.2000). Furthermore, in respect to what is depicted in these photos to which there was objection, any error in their admission would be harmless beyond a reasonable doubt. Accordingly, this issue cannot be a basis for habeas relief as Jones has failed to show prejudice flowing from appellate counsel's failure to raise this issue on direct appeal.

PROSECUTORIAL COMMENTS
Jones next argues that the prosecutor made three separate improper comments during the penalty phase closing argument to which trial counsel did not object and which appellate counsel should have raised on direct appeal. Jones raised in his eighth claim to his rule 3.850 motion submitted to the trial judge that trial counsel was ineffective for failing to object to these comments. See Jones II, 732 So.2d at 314, n. 1. The trial judge held this issue to be procedurally barred and denied relief. See id. at 314-15. When appealing the trial judge's denial of his 3.850 motion to this Court, Jones did not pursue this claim. See id.
Jones maintains in this habeas petition that these comments constitute fundamental error and that therefore appellate counsel was ineffective for failing to argue in the direct appeal that the comments were fundamental error. "In order to constitute fundamental error, improper comments made in the closing arguments of a penalty phase must be so prejudicial as to taint the jury's recommended sentence." Thomas v. State, 748 So.2d 970, 985 n. 10 (Fla.1999). In this habeas, Jones alleges three different arguments[14] that singularly or in toto amount to fundamental error.
During the penalty phase closing argument, the prosecutor told the jury:
Now, I guess, of course, the first question is shall we give this defendant the same justice that he gave Ernie Ponce de Leon? And, of course, the answer to that is no. Because what he gave Ernie Ponce de Leon was not justice but murder. And that's not what we're here about. That's not what our system is about. But wouldn't it have been nice if Ponce de Leon had had the opportunity to plead his case? Wouldn't it be nice if there had been a judge and jury to determine what it was that he had done wrong in order for him to be killed like that? Wouldn't it be nice if he could have called witnesses on his behalf or a psychologist to talk about his early childhood? Wouldn't that have been nice?
But, of course, that didn't happen and it couldn't happen because this defendant wasn't interested in doing what was right. This defendant was interested in killing this man right here.
I want to show you two pictures, and I don't show you this for shock effect. I know you have seen these before. But this is what we are here about today. Here is Ernie Ponce de Leon when he was alive. Here he is on the coroner's table on the morning of July 8, 1988. Dead because this man decided on his own that it was time for Ernie Ponce de *589 Leon to die. That's why this picture is here. Because this man made a judgment and he killed Ernie Ponce de Leon, and he killed him by putting two bullets into his chest. And I was going to show you that photograph but I know you have seen that before. There's really no need to. You can take it back with you if you wish. But I don't really suspect any one of you will ever forget the size of those two bullet holes in his chest or the testimony of the doctor that examined him and said his heart was destroyed. That he was dead like that (snapping fingers), because that man, that man decided it was time for Ernie Ponce de Leon to leave us. No judge, no jury, no witnesses, nothing. This is time to go. They didn't give him a warning. He had no idea it was his time to go. They didn't give him due process like we're giving him. They didn't give him a chance to argue his case. They didn't even take any lesser possibilities. There was no question. When that man popped out of the car, death was on his mind, and it wasn't his own death. It was the death of Ernie Ponce de Leon.
. . . .
How many is enough, I guess is the question. How many times do people have to be put at risk? How many times is it okay for Clarence Jones to threaten people with weapons and then to kill them?
. . . .
[Dr. Anis] told you also that the defendant has told him that basically he had a hard life; that his parents had divorced when he was young, that he lived with his father and his father dies, his mother dies, and some brothers died. Ladies and gentlemen, ask yourself the question. What right does that give anybody to take the life of a good man that didn't have to die. Because Clarence Jones says that he had some misfortune in life? That gives him the right to take the life of a good man?....
. . . .
You know, he gives you those certificates concerning his past. I think he got his GED. He got a certificate in woodworking course. I think he got a prison ministries certificate; he got a couple of certificates from the PTL Club signed by Mr. Bakker. You know, we're not interested in his past. What we're interested in is July 8, 1988, because that has the most effect.
We have considered allegations of fundamental error stemming from closing argument in a habeas petition. See Robinson v. Moore, 773 So.2d 1, 7 (Fla.2000). However, we have not done so in an instance in which, as here, the issue was raised in the rule 3.850 motion, denied by the trial court, and then not pursued on appeal of the denial of the 3.850 motion. We do not reach in this case whether failure to pursue that denial bars raising the issue in this habeas petition because we do not find the comments reached the level of fundamental error. Thus, we come to the same conclusion we reached in Robinson. Accordingly, this issue does not form the basis of habeas relief.

INAPPLICABLE AGGRAVATORS
Jones next argues that this Court, in light of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), erred in upholding the death sentence even though the advisory jury was instructed upon two aggravators that later were either not found by the trial judge[15] or struck by this Court on direct appeal.[16] *590 We find this claim to be procedurally barred.
In Espinosa, the Supreme Court held that in capital cases neither sentencing authority (advisory jury or trial judge) may weigh an invalid aggravator. See id. at 1082, 112 S.Ct. 2926. There, the Supreme Court held that the "especially wicked, evil, atrocious or cruel" aggravator was unconstitutionally vague. See id. at 1081, 112 S.Ct. 2926. In this habeas petition, Jones does not claim that the two aggravators were unconstitutionally vague or otherwise invalid; rather, Jones argues that instructing the jury on aggravators later found to not be supported by the evidence is impermissible. Thus, there is no Espinosa error.
In Foster v. State, 679 So.2d 747 (Fla. 1996), this Court made clear that a jury is presumed not to have weighed properly instructed aggravators that subsequently are found not to exist. See id. at 754. Clearly, Jones's argument concerning Espinosa error is merely an attempt to use habeas to reargue the wisdom of the death sentence in this case. This issue was adversely decided against Jones on direct appeal; thus, this issue is procedurally barred. See Parker v. Dugger, 550 So.2d 459, 460 (Fla.1989).

CONCLUSION
For the reasons expressed above, we deny all relief in this petition for writ of habeas corpus.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] We have previously stated that counsel Davis, at the time of Jones's trial, "had been a member of The Florida Bar for seventeen years and had substantial experience in practicing criminal defense law. Additionally, Davis had previously tried twelve to fifteen capital cases, with approximately six of those cases reaching penalty phase verdict." Jones v. State, 732 So.2d 313, 316 (Fla.1999) (Jones II).
[2] Jones alleged on direct appeal that the trial judge: (1) erred in excusing unnamed prospective jurors for cause on account of their opposition to the death penalty; (2) improperly restricted Jones's cross-examination of two state witnesses, Beverly Harris and Sidney Earle, regarding their use and knowledge of drugs, drug dealers, and possible drug purchases; (3) failed to allow the defendant to impeach Harris and Earle with prior convictions for drug-related offenses and violence towards police officers; (4) improperly refused to allow Harris's original statement that Jones shot the victim with a "silver" handgun to be introduced; (5) erred in admitting evidence against Griffin, in contravention of Williams v. State, 110 So.2d 654 (Fla.1959), that Griffin previously attempted to murder a police officer; (6) improperly found aggravating circumstances, including that the murder was committed during the course of a robbery; and (7) failed to find certain statutory and nonstatutory mitigation. See Jones I, 580 So.2d at 145-146. We rejected each of Jones's contentions except issue seven. See id. There, we agreed with Jones that the trial judge improperly found the robbery aggravator, but we found that reversal was not required because the trial judge had made an alternative finding that this aggravator was not determinative of its decision to impose the death penalty. See id. at 146. We upheld the trial judge's decisions regarding the other aggravators and mitigators. See id.
[3] Then Circuit Judge Philip Padovano presided over Jones's trial. Judge Padovano agreed to preside over the hearing on Jones's 3.850 motion after Judge Padovano was appointed to the First District Court of Appeal.
[4] Jones alleged on appeal of the denial of his rule 3.850 motion: (1) ineffective assistance of trial counsel for his failure to (a) investigate, develop and present mitigation, (b) obtain a competent mental health examination for Jones, and (c) explain to the jury Jones's positive HIV status; and (2) the State withheld exculpatory material in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See Jones II, 732 So.2d at 315, 321.
[5] Jones alleges: (1) his appellate counsel was ineffective for failing present error regarding the admission of details surrounding Jones's prison escape and certain photographic evidence; (2) his appellate counsel was ineffective for failing to present the trial judge's denial of severance; (3) his appellate counsel was ineffective for failing to present the denial of Jones's request to exclude autopsy photographs; (4) his appellate counsel was ineffective for failing to present improper prosecutorial comments constituting fundamental error; (5) this Court applied the incorrect standard when reviewing Jones's mitigation; (6) this Court improperly upheld the trial judge's instruction to the jury of two legally inapplicable aggravators; and (7) this Court erred by applying an incorrect harmless error review after striking an aggravator.
[6] We find issues five and seven to be procedurally barred because these issues were adversely decided against Jones on direct appeal. See Parker v. Dugger, 550 So.2d 459, 460 (Fla.1989) (habeas is not proper to relitigate issues that could have been or were raised on direct appeal).
[7] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[8] Garrett testified that escaped inmate Robinson was captured the same day. Garrett's testimony does not reveal when the fifth escaped inmate was captured.
[9] Jones did not pursue a claim in his rule 3.850 motion that his trial counsel was ineffective for failing to object to the testimony of Clayton and Harris regarding the prison escape.
[10] Harris would later testify that she saw Jones, Griffin, and Goins with "guns and a lot of ammunition." She also testified that they always took these guns wherever they went, either on their person or in a tote bag.
[11] Williams v. State, 110 So.2d 654 (Fla. 1959).
[12] There was no argument in Jones's rule 3.850 motion that trial counsel was ineffective for allowing these autopsy photos to be admitted without objection.
[13] The shooting occurred at 1918 Lake Bradford Road.
[14] Jones complains that the prosecutor commented on Jones's due process rights, argued future dangerousness, and denigrated mitigation evidence.
[15] The trial judge in his sentencing order did not find the "great risk to many" aggravator.
[16] This Court struck the "committed during a robbery" aggravator on direct appeal. See Jones I, 580 So.2d at 146.